ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN OPEN COURT
U.S.D.C. - Atlanta

OCT 29 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Information |
| LESTER T. JONES JR. | No. 1:25-CR-458 |

THE UNITED STATES ATTORNEY CHARGES THAT:

**Count One**
**(Wire Fraud)**

1. Beginning on a date unknown, but from at least in or about May 2017, and continuing through in or about June 2025, in the Northern District of Georgia and elsewhere, the defendant, LESTER T. JONES, JR., knowingly devised and intended to devise a scheme and artifice to defraud ATL HAWKS, LLC, and to obtain money and property from ATL HAWKS, LLC by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, and for the purpose of executing the scheme, with the intent to defraud, to cause the transmission of interstate wire communications, in violation of Title 18 United States Code, Section 1343.

**Background**

2. At all times relevant to this Information:

    a)   ATL HAWKS, LLC, a Delaware Limited Liability Company ("Company"), was the operating entity for the Atlanta Hawks ("Team"), a professional basketball team that competed in the National Basketball Association ("NBA").

1

b)    Defendant JONES was employed in the Accounting and Finance Department of the Company from in or about March 2016 through in or about June 2025, working out of the Company's corporate offices in Atlanta.

c)    The Company initially hired defendant JONES as Director, Financial Planning & Analysis, in or about March 2016. Beginning in or about July 2018, defendant JONES served as the Company's Vice President, Financial Planning & Analysis. Beginning in or about August 2021, defendant JONES served as the Company's Senior Vice President, Finance. Between in or about July 2018 and June 2025, defendant JONES was the most senior accounting executive in the Company after the Chief Financial Officer.

d)    Defendant JONES' job duties evolved over time, but included managing and supervising personnel; handling payroll, accounts payable, financial planning, accounting, and employee expense reimbursements; and preparing or assisting with the preparation of the Company's financial statements, budgets, and reports to senior management and ownership.

e)    Defendant Jones was an authorized signatory on the Company's bank accounts, and he developed and issued the Company's Travel & Expense reimbursement policy in or about November 2016. This policy prohibited the use of Company credit cards for personal expenses.

f)    In or about early 2021, defendant JONES began administering the Company's corporate credit card account with American Express. In this role, defendant JONES: (i) served as American Express's sole contact regarding payment issues, delays, and card suspensions; (ii) determine which employees should receive Company American Express cards; and (iii) had

full visibility into the number of corporate credit cards, identity of the cardholders, account balances, and other program details. Defendant Jones also issued and caused to be issued multiple corporate American Express credit card accounts in his name and could authorize charges to cards assigned to other Company departments and employees.

g) Beginning in or about early 2021, defendant JONES also administered the Company's electronic expense reimbursement platform. In this role, defendant JONES supervised Company employees who operated the reimbursement platform, handled expense reimbursements, and approved payments to American Express, individual employees, and others.

h) To complete an expense reimbursement request, a Company employee submitted certain information electronically, including an expense report, invoice, receipt, or other document substantiating the expense(s), and certification that the report was true and accurate.

i) By virtue of his position, defendant JONES had special access to and insight into any limitations with the Company's internal financial system, which defendant JONES exploited for personal gain, including that prior to implementing a new expense reimbursement system in July 2024, the Company's reimbursement platform failed to properly integrate employees' corporate American Express credit card transactions into the platform, such that the actual transactions and expenses were not visible within the platform to the Company personnel handling the reimbursements for purposes of verification.

## Scheme to Defraud

3. The object of the scheme to defraud was for defendant JONES to use his position as a senior accounting employee to embezzle over $3.8 million from the Company.

4. Defendant JONES accomplished the scheme to defraud in two ways: (a) by submitting and directing the submission of dozens of fraudulent expense reimbursement requests, including fictitious and altered invoices, that caused the Company to reimburse defendant JONES for business expenses that defendant JONES had not incurred or did not exist, and (b) by charging millions of dollars in personal expenses to the Company's corporate credit cards without the Company's knowledge and authorization, including for travel to the Bahamas, Costa Rica, Hawaii, Las Vegas, Mexico, Puerto Rico, Switzerland, and Thailand, Louis Vuitton apparel, jewelry, Porsche car expenses, and tickets to concerts and sporting events.

5. In furtherance of the scheme to defraud, defendant JONES intentionally: (a) manipulated certain financial reports prepared for internal planning and budgeting purposes that he reported to the Company's senior management in order to conceal his unauthorized use of the Company's corporate credit cards; (b) doctored e-mail messages that were provided to legitimize transactions; and (c) falsely attributed large balances on a corporate American Express credit card to Team operations , to divert attention away from the unauthorized personal charges he incurred.

6. During the scheme defendant JONES made hundreds of unauthorized transactions using the Company's American Express credit cards.  For example,

in or about January 2025, defendant Jones altered an email from American Express to defraud the Company into making a $229,968.76 payment to American Express to cover fraudulently incurred personal expenses

    a)    On or about January 23, 2025, at 12:10 p.m., defendant JONES sent an e-mail message to an employee in the Company's Accounting and Finance Department, J.W., stating, in relevant part, "I'm trying to get my $200k payment together . . . AMEX threatened to cut us off again if I don't get that one . . . ."

    b)    On or about January 23, 2025, at 3:53 p.m., at the direction of defendant JONES, S.D., an employee in the Company's Accounting and Finance Department, prepared and submitted an electronic expense reimbursement request for defendant JONES in the amount of $229,968.76 for charges supposedly incurred by the Company at the Wynn Hotel in Las Vegas, Nevada for the NBA Emirates Cup. The reimbursement request attached a purported December 12, 2024 Wynn Hotel invoice provided by defendant JONES in the amount of $229,968.76 that referenced "NBA Emirates Cup, Tickets, Credentials, Logistics, Room."

    c)    On or about January 24, 2025, at 11:13 a.m., defendant JONES received an e-mail message from American Express inquiring about an overdue balance of $217,942.81 with respect to the Company's corporate credit card program.

    d)    On or about January 24, 2025, at 12:06 p.m., defendant JONES forwarded an altered version of the 11:13 a.m. American Express e-mail to S.D. and J.W., stating, in relevant part, "At least I know the Wynn's number is

right." The version of the 11:13 a.m. American Express e-mail was altered to falsely add references to "Wynn" charges totaling $229,968.76.

    e)    On or about January 24, 2025, at 3:54 p.m., S.D. sent an e-mail regarding the completed reimbursement request in the amount of $229,968.76 to defendant JONES for approval.

    f)    On or about January 24, 2025, at 3:56 p.m., defendant JONES replied to S.D.'s e-mail, stating, "Approved. Thank You."

    g)    On or about January 24, 2025, at 4:06 p.m., S.D. replied to defendant JONES's approval e-mail, stating, "Paid! Hopefully AMEX wont [sic] give you any more problems."

    h)    No Company American Express credit card or Company personnel incurred a charge in the amount of $229,968.76 on or about December 12, 2024, and no such invoice was ever issued by the Wynn Hotel.

7. On or about January 23, 2025, in the Northern District of Georgia and elsewhere, defendant LESTER JONES, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, promises, and omissions, with the intent to defraud, did cause to be transmitted by means of a wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds; to wit, the transmission of data from the Company's corporate computer server located in Atlanta, Georgia to the computer server of the Company's electronic expense reimbursement platform, Workday, located in Ashburn, Virginia, to cause the submission and

approval of a fraudulent expense reimbursement report by the Company in the amount of $229,968.76.

All in violation of Title 18, United States Code, Section 1343.

### Forfeiture Provision

8. Upon conviction of the sole offense alleged in this Criminal Information, the defendant, LESTER T. JONES, JR., shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real and personal, which constitutes or is derived from proceeds traceable to the offense, including, but not limited to, the following:

MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the sole offense alleged in this Criminal Information.

9. If, as a result of any act or omission of the defendant, any property subject to forfeiture:
    a) cannot be located upon the exercise of due diligence;
    b) has been transferred to, sold to, or deposited with, a third party;
    c) has been placed beyond the jurisdiction of the Court;
    d) has been substantially diminished in value; or
    e) has been commingled with other property, which cannot be divided without difficulty,

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek

forfeiture of other property of the defendant up to the value of the forfeitable property.

THEODORE S. HERTZBERG
*United States Attorney*

*/s/ Bernita B. Malloy*

BERNITA B. MALLOY
*Assistant United States Attorney*
Georgia Bar No. 718905
75 Ted Turner Drive S.W.
600 U.S. Courthouse
Atlanta, GA 30303
404-581-6000